**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RICK A. SLORP,**

**Plaintiff,**

**v.**

**Case No. 2:12-cv-498**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Norah McCann King**

**LERNER, SAMPSON & ROTHFUSS, et al.,**

**Defendants.**

**OPINION AND ORDER**

This matter is before the Court on Defendants' Bank of America, N.A. and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss (Doc. No. 9), Defendants Lerner, Sampson & Rothfull and Shellie Hill's Motion to Dismiss (Doc. No. 12) and Plaintiff's Motion for Leave to File an Amended Complaint (Doc. No. 25). For the reasons that follow, the Court **GRANTS** Defendants' Motions and **DENIES** Plaintiff's Motion.

## I. BACKGROUND

On December 14, 2007, Plaintiff signed a Note payable to Countrywide Bank FSB ("Countrywide"). That same day, Plaintiff signed a Mortgage, granting Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), acting as nominee for Countrywide and its successors and assigns, a security interest on property located at 5599 Coogan Place, Dublin, Ohio 43016. (Compl. ¶¶ 16, 17.) Upon Plaintiff's default following the March 1, 2010 payment, the alleged holder of the Note, BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP ("BAC"), retained Defendant Lerner, Samson & Rothfuss ("LSR") to file a foreclosure action. *Id.* ¶ 15, Ex. 1. Defendant Bank of America is the successor in interest

to BAC. LSR filed a foreclosure action in Franklin County, Ohio, on July 21, 2010 ("Foreclosure Action"). *Id.* ¶ 15.

The complaint filed in the Foreclosure Action, which is attached to Plaintiff's complaint in the instant action, contains a copy of Plaintiff's Note, Mortgage and an Assignment of Mortgage. *Id.* ¶¶ 16, 17, 19. The Assignment was made by MERS, acting solely as nominee for Countrywide, to BAC. Countrywide was not a going concern at the time of the Assignment. The MERS assignment was executed by Defendant Shellie Hill, who is both an employee of LSR and an Assistant Secretary and Vice President of MERS.[1] *Id.* ¶ 8, Ex. 1.

In the Foreclosure Action, LSR filed a motion for summary judgment on behalf of BAC. *Id.* ¶¶ 23, 24. The court awarded BAC judgment on January 18, 2011. *Id.* Thereafter, Plaintiff retained new counsel and filed a motion for relief from judgment. *Id.* ¶ 25. On March 15, 2012, BAC voluntarily dismissed the Foreclosure Action. *Id.* ¶ 29.

---

[1]MERS' business is described as follows:

> MERS administers an electronic registry to track the transfer of ownership interest and servicing rights in mortgage loans. With respect to certain loans of which its members are the beneficial owners, MERS also serves as mortgagee of record and holds legal title to the mortgages in a nominee capacity. MERS remains the mortgagee of record when beneficial ownership interests or servicing rights are sold from one member of the MERS system to another. When the beneficial interest in a mortgage loan is transferred from one member of the MERS system to another, MERS tracks the transfer through its internal records. When rights are transferred from a member of the MERS system to a non-member, MERS executes and records an assignment from MERS to the non-member.
>
> To facilitate the execution of the assignments from MERS, MERS designates "certifying officers," who are typically employees of MERS member firms. MERS authorizes these employees, through formal corporate resolutions, to execute assignments on behalf of MERS.

*In re Moreno*, No. 08-17715-FJB, 2010 Bankr. LEXIS 1558 at *4–5 (D. Mass. May 24, 2010).

On June 7, 2012, Plaintiff filed this action, seeking to recover the legal fees he allegedly incurred in defending himself in the Foreclosure Action. Plaintiff alleges that the Assignment was transferred by Countrywide, which was a non-existent company at the time of assignment and therefore, the Assignment contains false statements. *Id.* ¶ 34. Plaintiff does not seek to invalidate the Assignment nor does he attack the Mortgage as it pertains to the existence of a lien on the property. (Doc. No. 17 at 4.) He seeks only reimbursement for his legals fees based on the contention that Defendants made false statements under oath in pursuit of a debt, which he alleges violates the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a *et seq.*, the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code § 1345.01 *et seq.*, and Ohio's falsification statute, Ohio Rev. Code § 2921.13. Plaintiff also claims that Defendants' actions constitute an illegal conspiracy.

On August 7, 2012, Defendants Bank of America and MERS moved to dismiss all of the claims filed against them. (Doc. No. 9.) That motion is fully briefed. (Doc. Nos. 17, 18.) Also on August 7, 2012, Defendants LSR and Ms. Hill moved to dismiss all of the claims filed against them. (Doc. No. 12.) That motion too is ripe for review. (Doc. Nos. 16, 19.)

On January 21, 2013, Plaintiff filed his Motion for Leave to File an Amended Complaint. (Doc. No. 25.) That motion is fully briefed. (Doc. Nos. 27, 28, 29, 30.)

## II. DEFENDANTS' MOTIONS

### A. Standard

In evaluating a complaint to determine whether it states a claim upon which relief can be granted, the Court must construe it in favor of the plaintiff, accept the factual allegations contained in it as true, and determine whether the factual allegations present any plausible claim.

*See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–5570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying the plausibility standard articulated in *Twombly*). The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citation omitted).

**B. Analysis**

Plaintiff alleges that he is entitled to reimbursement of the legal fees he allegedly incurred in defending himself in the Foreclosure Action because the Assignment that was made by MERS to BAC "contained false statements, which were designed to demonstrate a transfer of a mortgage interest from a non-existent company [Countrywide] to Bank of America [BAC's successor in interest], to further the Foreclosure Action." (Pl. Mem. in Opp. at 1) (citing Compl. at ¶¶ 18–22).

Defendants argue that they are entitled to dismissal of all of the claims filed against them because Plaintiff lacks legal standing to challenge the Assignment and because of numerous other reasons, including: (1) The dissolution of Countrywide does not affect MERS' authority to assign the Mortgage because the terms of the mortgage specifically grant MERS the authority to act on behalf of Countrywide, as well as its successors and assigns, regardless of whether Countrywide was in existence at the time of the assignment. *See, e.g., Rosa v. Mortgage Elec. Sys. Inc.*, 821 F. Supp. 2d 423, 431 (D. Mass. 2011) ("The dissolution of the original lender does not affect MERS' authority to assign a mortgage"); *Kiah v. Aurora Loan Services, LLC*, D.Mass. No. 10-40161-FDS, 2011 WL 841282, *4 (D. Mass. Mar. 4, 2011) (same); (2) The Mortgage

provides that MERS has the right to exercise the interests created in the Mortgage, 'including, but not limited to' assigning the mortgage on the lender's behalf. *See Hargrow v. Wells Fargo Bank N.A.*, 491 F. App'x 534 n.3 (6th Cir. 2012) ("In light of the language in the Mortgage that does give MERS the right to exercise the interests created by the Mortgage "including, but not limited to" certain delineated rights . . . we deem the Mortgage as creating a right of assignment in the mortgagee."); (3) Bank of America could have enforced the Note against Plaintiff and foreclosed on the Mortgage as holder of it regardless of whether the Assignment was recorded, because "[r]ecordation of a mortgage assignment is not necessary to the effective transfer of the obligation or the mortgage securing it." *See* Restatement of the Law 3d, Mortgages, Section 5.4, at Comment b (1997); (4) MERS was given authority to act not only on behalf of Countrywide but also on behalf of Countrywide's "successors and assigns," which were in existence at the time of the Assignment; (5) Plaintiff did not give the Mortgage to Countrywide, but rather granted a mortgage to MERS, which is defined in the Mortgage as "a separate corporation acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this security instrument**." (Compl. Ex. 1) (emphasis in the original); and (6) There are no false statements, indeed no sworn statements at all, in the Assignment and instead "there is only an 'acknowledgment' that the signer holds the corporate position set forth, that she signed the instrument on behalf of the corporation with proper authority, and that the instrument was the act of the corporation for the purpose therein stated," which are all true assertions. Plaintiff's arguments regarding false statements "confuses acknowledgment clauses, such as contained in mortgage assignments, with notary jurats, such as contained in affidavits," (Doc. No. 19 at 1–2) (citing Ohio Rev. Code § 147.541).

While Defendants' arguments are all well supported, the Court finds it unnecessary to address them. Plaintiff's claims are predicated solely upon the Assignment and Plaintiff lacks legal standing to attack the Assignment. Further, even if Plaintiff possessed standing, his claims fail to state plausible claims for relief.

**1. Standing**

Plaintiff may not challenge the Assignment because he is not a party to the assignment. *See, e.g., Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010); *Bridge v. Aames Capital Corp.*, No. 1:09 CV 2947, 2010 U.S. Dist. LEXIS 103154, 2010 WL 3834059, *4 (N.D. Ohio Sept. 29, 2010) (citations omitted). He, therefore, cannot dispute the validity of the Assignment because as a "non-party to those documents, [he] lacks standing to attack them." *Livonia Prop. Holdings*, 717 F. Supp. 2d 724, 735 (E.D. Mich. 2010) *aff'd* 399 F. App'x 97 (6th Cir. 2010). "A debtor, for example, cannot raise alleged acts of fraud, or question the motive or purpose underlying an assignment." *Id.* at 736 (citing 6A C.J.S. Assignments § 132).

In *Ogle v. BAC Home Loans Servicing L.P.*, No. 2:11-cv-00540, slip op. (S.D. Ohio Jan. 12, 2012), this Court dismissed claims for lack of standing in a case where the plaintiffs attempted to attack the validity of a mortgage assignment. In *Ogle*, the borrowers responded to a foreclosure action by filing affirmative claims alleging that their loan was not transferred properly because the mortgage assignments were false and/or fraudulent. *Id.* p. 27. The defendants moved to dismiss the claims on, *inter alia*, the basis that the borrower-plaintiffs lacked standing to challenge the mortgage assignments. *Id.* This Court agreed with the defendants, explaining:

> But Plaintiffs have no standing to challenge the transfers of interests relating to the mortgage loan, and the repayment obligation remains the same under the loan agreement. *See Bridge v. Aames Cap. Corp.*, No. 1:09-cv-2947, 2010 WL 3834059, at *3 (N.D. Ohio Sept. 29, 2010) ("borrower certainly has an interest in avoiding foreclosure. . .[however,] the validity of the assignments does not affect whether Borrower owes its obligations, but only to whom Borrower is obligated.") Importantly, there is no dispute between BAC (now Bank of America, N.A., successor by merger) and the other Defendants that Bank of America N.A. may properly enforce the note, nor is there any dispute between the Defendants as to the validity of any assignment. Only Plaintiffs challenge Bank of America N.A.'s ability to foreclose on the note.

*Id.* at 27–28 (alterations in original).

As in the circumstances before the Court in *Ogle*, here there is no dispute between Defendants that Defendant Bank of America may properly enforce the Note, nor is there any dispute between Defendants as to the validity of the Assignment. Only Plaintiff challenges the Assignment, and then only to the extent that it contains an allegedly false statement – not that the Assignment is invalid. (Doc. No. 17 at 4.)

Further, Plaintiff has not suffered any injury as a result of the Assignment. This Court explained in *Ogle*:

> Not only do Plaintiffs not have standing to challenge the validity of assignments, they assume an injury where none exists. As noted in the *Bridge* case: "regardless of the outcome of this litigation, [borrower] is still in default on her mortgage and subject to foreclosure. As a consequence, [borrower] has not suffered any injury as a result of the assignment . . . nor is there any likelihood that [borrower's] requested relief will prevent her alleged injury."

*Ogle*, *supra*, at 28 (alterations in original) (citing *Bridge*, 2010 WL 3834059, at *3).

Likewise, an Ohio appellate court expressed:

> The mortgage assignments did not alter the [borrowers'] obligations under the note or mortgage. [The bank] filed the foreclosure complaint based on [the borrowers'] default under the note and mortgage, not because of the mortgage assignments. ***[The borrowers'] default exposed them to foreclosure regardless of the party who***

> ***actually proceeds with foreclosure.*** [The borrowers] therefore, failed to show they suffered or will suffer any injury, the injury is traceable to the mortgage assignments, and it is likely a favorable decision will remedy the injury. The trial court properly granted [the bank]'s motion for summary judgment because the [borrowers] lacked standing to challenge the mortgage assignments. Civ.R. 56; *Wilmington City School Dist. Bd. of Edn.*; *see Chase Home Fin., L.L.C. v. Heft*, 3d Dist. Nos. 8-10-14 and 8-11-16, 2012 Ohio 876; *Noland v. Wells Fargo Bank N.A. (In re Williams)*, 395 B.R. 33, 44 (S.D. Ohio 2008).

*Unger*, 2012 Ohio App. LEXIS 1723, at *19, 2012 Ohio 1950, ¶ 35 (emphasis added). Put another way, "regardless of the outcome of this litigation, Plaintiff is still in default on [his] mortgage and subject to foreclosure. As a consequence, Plaintiff has not suffered any injury as a result of the assignment between [Defendants] nor is there any likelihood that Plaintiff's requested relief will prevent [his] alleged injury." *Bridge*, 2010 U.S. Dist. LEXIS 103154, at *13 (citation omitted).

Plaintiff responds to the lack of injury argument, without citing to any supporting case law, by stating that his damages "flow [] from Defendants' tortious conduct" and include having to "expend resources to defend" the Foreclosure Action. (Doc. No. 17 at 5.) But Plaintiff's contention ignores the fact that the Foreclosure Action was filed because of his default under the terms of the Note and Mortgage; not because of the creation of the allegedly "false" Assignment. The "resources expended to defend" the Foreclosure Action were incurred because Plaintiff defaulted under the Note, not because of the Assignment.

Moreover, in the instant action, there is no chance that Plaintiff would be required to pay his mortgage debt twice, which is the only interest or right that Plaintiff has in the Assignment. *See* 6A C.J.S. Assignments § 132 (2010) ("[T]he only interest or right which an obligor of a claim has in the instrument of assignment is to insure him or herself that he or she will not have

to pay the same claim twice.") As the Sixth Circuit has explained:

> An obligor "may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void." 6A C.J.S. Assignments § 132 (2010). These defenses include nonassignability of the instrument, assignee's lack of title, and a prior revocation of the assignment, none of which are available in the current matter. *Id.* Obligors have standing to raise these claims because they cannot otherwise protect themselves from having to pay the same debt twice. *Id.* In this case, Livonia is not at risk of paying the debt twice, because Farmington has established that it holds the original note.

*Livonia Property Holdings*, 399 F. App'x at 102.

Here too there is no risk that Plaintiff may have to pay the debt twice, nor does Plaintiff claim that there is such a risk. Indeed, it is on this issue that Plaintiff attempts to distinguish his lawsuit from the cases where a plaintiff-borrower is seeking to invalidate an assignment of mortgage so to prevent foreclosure. Plaintiff posits:

> [Plaintiff] does not seek to invalidate the assignment of mortgage as it pertains to the existence of a lien on the property. He merely seeks recompense for debt collectors having made false statements under oath in pursuit of a debt. . . . [Plaintiff] has not attacked the validity of the assignment or sought to extinguish the underlying mortgage as it pertains to the existence of a lien on the property. [Plaintiff] has not sought declaratory relief to invalidate the assignment or mortgage.

(Doc. No. 17 at 4.)

Defendants, however, correctly note that Plaintiff highlights a distinction without a difference. Similar arguments have been unsuccessful in the Sixth Circuit and in Ohio courts, which have found the reason for attacking a mortgage assignment by a non-party does not change the non-party's lack of standing. For example, the district court in *Livonia Property Holdings* specifically noted that a debtor does not have standing to "raise alleged acts of fraud, or question the motive or purpose underlying an assignment." 717 F. Supp. 2d at 736 (citing 6A C.J.S. Assignments § 132).

Ohio courts too have rejected similar arguments made by borrowers attacking statements made in mortgage assignments. *See, e.g., Chase Home Fin., LLC v. Heft*, Nos. 8-10-14, 8-11-16, 2012 Ohio 876, ¶37, 2012 Ohio App. LEXIS 766 (Ohio App. 3rd Dist. March 5, 2012). In *Heft*, the borrower filed a motion for relief from judgment in which he challenged the trial court's order granting judgment in foreclosure. *Id.* at ¶ 31. Specifically, the borrower alleged that the mortgage assignment may have been "robo-signed," which he claimed would constitute a violation of the OCSPA if proven. *Id.* at ¶ 32. The Ohio Third District Court of Appeals disagreed and held:

> [S]ince [borrower] was not a party to the assignment of mortgage, he lacks standing to challenge its validity; and therefore, the assignment's validity cannot serve [borrower] a meritorious defense or claim for purposes of his Civ.R.60(B) motion.

*Id.* at ¶36, (citing *Bridge, supra,* 2010 WL 3834059 at *4). Like the plaintiff's claims in *Heft*, Plaintiff's claims in the case *sub judice* are predicated on statements made in the Assignment, and therefore, cannot form the basis of liability because Plaintiff lacks standing to challenge the Assignment's validity. As a result, Plaintiff has failed to allege any plausible claim for relief related to the Assignment.

**2. Plaintiff's Claims**

Even if the Court were to find that Plaintiff had standing to challenge the Assignment and/or to base his claims for relief on the alleged improprieties related to the Assignment, Defendants would still be entitled to dismissal because each one fails to state a claim upon which relief can be granted.

**a. Fair Debt Collection Practices Act**

Plaintiff alleges that Defendants' "actions of filing and maintaining the foreclosure action

with the use of false statements and evidence constitute[s] a false, deceptive, and/or misleading practice in attempt to collect a debt, in violation of the FDCPA, 15 U.S.C § 1692e." (Compl. ¶ 34.) Defendants argue that they are entitled to dismissal of this claim because it is time barred. This Court agrees.

Claims under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k. The Foreclosure Action was filed on July 21, 2010. Thus, Plaintiff had one year, until July 21, 2011, to raise a claim under the FDCPA. Plaintiff did not file the present action until June 7, 2012, nearly one year after the statute of limitations had expired.

In his opposition memorandum, Plaintiff contends that maintaining a lawsuit serves as a "continuing violation" of the FDCPA, and therefore his claim is not time barred. (Doc. No. 16 at 4.) Plaintiff, however, is mistaken. "Courts have found that maintaining a lawsuit is not a 'continuing violation' tolling the limitations period [under the FDCPA]." *Ball v.Ocwen Loan Servicing*, LLC, No. 1:12-CV-0604, 2012 U.S. Dist. LEXIS 68173, at *10-11 (N.D. Ohio, May 16, 2012). The *Ball* court relied heavily upon the thorough canvassing of the case law found in *Ruth v. Unifund CCR Partners*, Case No. 5:08CV2689, 2009 U.S. Dist. LEXIS 17362 (N.D. Ohio March 6, 2009). In *Ruth*, the plaintiff argued that either (1) every day a lawsuit that violates the FDCPA remains pending it is a continuing violation; or, in the alternative, that (2) every filing or event that occurs during the pendency of such a lawsuit constitutes a new violation. *Id.* at *35. The court rejected the plaintiff's arguments that the maintenance of a lawsuit by performing common litigation tasks in association with the case would alter the limitations period from running from either the filing of the suit or the service of the complaint. The court

stated that "[s]imilar contentions have been rejected repeatedly by other courts, and this Court finds Plaintiff's argument equally spurious." *Id.* at *36 ("The course of litigation is not, in itself, a 'continuing violation' of the FDCPA.") (citations omitted) .

As in *Ruth*, and in the numerous cases identified by that court, Plaintiff here cannot depend on the maintenance of a lawsuit to constitute a continuing violation for purposes of altering the limitations period imposed by the FDCPA. Accordingly, Plaintiff's FDCPA claim is time-barred and must be dismissed.

**b. Ohio Consumer Sales Practices Act**

Plaintiff brings his claim under the OCSPA only against Defendant LSR. LSR contends that it is entitled to dismissal of this claim because there was no underlying "consumer transaction," which is a requirement under the statute. Plaintiff does not address this argument in his opposition memorandum. The Court finds LSR's argument well taken.

The OCSPA provides that "no supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." Ohio Rev. Code § 1345.02(A). A "consumer transaction" is defined as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." Ohio Rev. Code § 1345.01(A). However, the OCSPA specifically excludes transactions between financial institutions and their customers in its definition of consumer transaction. Ohio Rev. Code § 1345.01(A); *Perkins v. Wells Fargo Bank, N.A.*, No. 2:11-cv-952, 2012 U.S. Dist. LEXIS 149973, 2012 WL 5077712, *14 (S.D. Ohio Oct. 18, 2012).

The Court finds *DeJohn v. Lerner, Sampson & Rothfuss*, No. 1:12CV1705, 2012 U.S.

Dist. LEXIS 170 (N.D. Ohio Nov. 30, 2012) directly on point. In that case, the plaintiffs asserted claims under, *inter alia*, the OCSPA, alleging that LSR falsely claimed that its client, Bank of America, was the owner and holder of a mortgage note at the time LSR filed a foreclosure action against them. The court explained that the exception to inclusion as a consumer transaction found in Ohio Revised Code § 1345.01(A)(1) includes Bank of America, because it is "[a] national bank organized and existing as a national bank association pursuant to the 'National Bank Act,' 12 U.S.C. 21." *Id.* at *8. With regard to the claims against LSR, the *DeJohn* court concluded:

> "When an attorney represents a financial institution in a transaction that is exempted from the statute, the attorney is similarly exempt from liability under the statute. *Gionis v. Javitch, Block & Rathbone*, 405 F. Supp. 2d 856, 869 (S.D. Ohio 2005)." *Perkins* [*v. Wells Fargo Bank, N.A.*, No. 2:11-cv-952], 2012 U.S. Dist. LEXIS 149973, 2012 WL 5077712, *14 [(S.D. Ohio Oct. 18, 2012)]. Defendant LSR represented [Bank of America] and Chase, which are exempt financial institutions under the Ohio statute. Thus, Plaintiffs' OCSPA claim against LSR fails as a matter of law.

*Id.* For this same reason, Plaintiff's OCSPA claim against LSR in the present action fails as a matter of law.

**c. Falsification**

Plaintiff alleges that Defendants violated Ohio's falsification statute, Ohio Rev. Code § 2921.13, by falsifying statements in the Assignment. Defendants argue that § 2921.13 is a criminal statute that affords no civil cause of action absent the imposition of criminal proceedings. In response to Defendants' argument, Plaintiff asserts that the plain language of the falsification statute provides for an independent civil claim. Plaintiff's assertion is not well taken.

As Defendants correctly point out, Ohio courts and this Court have rejected this same argument. In *Hershey v. Edelman*, an Ohio appellate court explained:

> However, R.C. 2921.13 is a criminal statute contained within Title 29 of the Ohio Revised Code. Title 29 is a criminal title. *See Howard v. Supreme Court of Ohio*, 10th Dist. No. 04AP-1093, 2005 Ohio 2130 (holding R.C. 2921.13 is a criminal statute and finding the plaintiff failed to point to any authority that permitted a civil action for alleged violations of R.C. 2921.13). Defendant has pointed to no authority, and our independent research has revealed none, which supports the advancement of an independent civil claim for falsification in a private action that is in fact an original action, without the initiation of criminal charges or criminal proceedings pursuant to R.C. 2921.13. Here, there is absolutely no evidence that defendant was arrested for or charged or indicted for a falsification offense.

187 Ohio App. 3d 400, 408 (Ohio App. 10th Dist. 2010). *See also in Whelan v. Vanderwist of Cincinnati, Inc.*, 2011 Ohio 6844, 2011 Ohio App. LEXIS 5662 (Ohio App. 11th Dist. 2011) (holding that Ohio Revised Code § 2921.13 is a criminal statute that does not give rise to a civil cause of action).

Likewise, this Court has previously considered whether § 2921.13(G) creates a civil right of action in the absence of criminal proceedings, stating:

> The difficulty with Plaintiff's position is that Plaintiff cannot prove the required predicate for an action under Ohio Revised Code § 2921.13(G) because neither [Defendants] ha[ve] been convicted of a violation of Ohio Revised Code § 2921.13. To read § 2921.13(G) as permitting a lawsuit without a conviction would completely undermine the policy explicated by Judge Brogan in *Pratt* [*v. Payne*, 153 Ohio App. 3d 450 (Ohio App. 2nd Dist. 2003)] and the many prior cases on which *Pratt* relied. In other words, to allow a civil action under Ohio Revised Code § 2921.13(G) without a prior conviction would be to permit a civil action for perjury. Plaintiff cites no authority for the proposition that that was what was intended by the General Assembly in enacting Ohio Revised Code § 2921.13(G).

*Replogle v. Montgomery Cty*, No. 3:09-cv-102, 2009 U.S. Dist. LEXIS 130719, 2009 WL 1406686, *5 (S.D. Ohio May 19, 2009).

Consequently, Plaintiffs have failed to allege a plausible claim for falsification, and

Defendants, therefore, are entitled to judgment as a matter of law on this claim.

**d. Conspiracy**

Plaintiff's last cause of action is for civil conspiracy, which consists of "'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 419 (1995) (quoting *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St. 3d 121, 126 (1987)). "A civil conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy." *Morrow v. Reminger & Reminger Co. LPA*, 183 Ohio App. 3d 40, 60 (Ohio App. 10th Dist. 2009) (citing *Orbit Electronics, Inc. v. Helm Instrument Co., Inc.*, 167 Ohio App. 3d 301 (Ohio App. 8th Dist. 2006); *Gosden v. Louis*, 116 Ohio App. 3d 195, 220 (Ohio App. 9th Dist. 1996)).

In the case *sub judice* action, Plaintiff's civil conspiracy claim is based upon falsification. "Having concluded that [Plaintiff's] complaint fails to state causes of action for falsification, [the Court] likewise conclude[s] that [he] fails to state a cause of action for the derivative claim of conspiracy." *Id.* Accordingly, Defendants are entitled to dismissal of Plaintiff's civil conspiracy claim.

## III. PLAINTIFF'S MOTION

The Court first notes that Plaintiff's proposed amended complaint provides no new factual allegations that would alter the Court's analysis above. Plaintiff, however, also moves for leave to amend his complaint to add a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et seq*.

**A. Standard**

Plaintiffs' Motion to Amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which provides that a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The grant or denial of a request to amend a complaint is left to the broad discretion of the trial court. *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). In exercising its discretion, the trial court may consider such factors as "undue delay, bad faith or dilatory motive on the part of a movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [and] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993)).

**B. Analysis**

Plaintiff seeks to add a claim for violations of RICO, which provides a private right of action to any person that has been injured by a violation of 18 U.S.C. § 1962. 18 U.S.C. § 1964(c). To state a plausible RICO claim, Plaintiff must allege: "(1) that there were two or more predicate offenses; (2) the existence of an enterprise engaged in or affecting interstate or foreign commerce; (3) a nexus between the pattern of racketeering activity and the enterprise; and (4) an injury to his business or property by reason of the above." *Smith v. ABN AMRO Mortg. Group., Inc.*, No. 1:06cv45, 2007 WL 950334, at *10 (S.D. Ohio Mar. 27, 2007).

Defendants contend that Plaintiff fails to plead a plausible RICO claim because, among

other things, he failed to allege any cognizable injury. (Doc. No. 28 at 4) ("Plaintiff has not made payments on his mortgage for almost three years; no other entity has attempted to enforce the note; Plaintiff named all of the parties to the assignment of his mortgage as defendants in this case, and they all seek to support the assignment's validity."). Defendants' argument is well taken.

As this Court explained in detail *supra*, Plaintiff has failed to adequately allege an injury resulting from the Assignment at issue here. *See also Perkins v. Wells Fargo Bank, N.A.*, supra, No. 2:11-cv-952, 2012 U.S. Dist. LEXIS 149973, 2012 WL 5077712, *14 (S.D. Ohio Oct. 18, 2012) (dismissing RICO claim in similar circumstances). Consequently, Plaintiff has failed to state a RICO claim upon which relief can be granted.

## IV. CONCLUSION

For the reasons that follow, the Court **GRANTS** Defendants' Bank of America, N.A. and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss (Doc. No. 9), **GRANTS** Defendants Lerner, Sampson & Rothfull and Shellie Hill's Motion to Dismiss (Doc. No. 12) and **DENIES** Plaintiff's Motion for Leave to Amend. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

3-8-2013
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**