IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICK A. SLORP,

        Plaintiff,

  v.                                     Civil Action 2:12-cv-498
                                         Chief Judge Edmund A. Sargus, Jr.
                                         Magistrate Judge Jolson

LERNER, SAMPSON & ROTHFUSS,
et al.,

        Defendants.

**OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion to Compel (Doc. 82) and Supplemental Motion to Compel (Doc. 93). For the reasons that follow, the Motions are **DENIED**.

**I. BACKGROUND**

**A. Facts and Prior Proceedings**

Several prior opinions have detailed the facts of this case. *See, e.g.*, *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249 (6th Cir. 2014); (Doc. 31). Briefly, and relevant to the pending Motions, the catalyst for this case was a separate foreclosure action in state court in 2010. In July of 2010, BAC Home Loans Servicing, LP ("BAC") brought a foreclosure action against Plaintiff in the Franklin County Court of Common Pleas. It did so based on a promissory note ("the Note") naming Countrywide Bank, FSB ("Countrywide Bank") as the lender and Plaintiff as the borrower.

The Note was secured by a mortgage ("the Mortgage") on Plaintiff's home. The Mortgage lists Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") as the

1

mortgagee. (Doc. 78-1 at 11). MERS executed the Mortgage as "nominee for [Countrywide Bank's] successors and assigns." (*Id.*). Based on the Mortgage, Plaintiff agreed

> that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

(*Id.* at 13).

On July 9, 2010, MERS, again acting as Countrywide Bank's nominee, assigned Countrywide Bank's interest in the Mortgage to BAC ("the Assignment"). Shellie Hill, now a Defendant in this case, executed the Assignment to BAC on behalf of MERS. (*Id.* at 27). At the time of the Assignment, Ms. Hill "purported to be an assistant secretary and vice president of MERS." *Slorp*, 587 F. App'x at 252; (*see* Doc. 78-1 at 27–28). Ms. Hill was also employed as a paralegal by Defendant Lerner, Sampson & Rothfuss ("LSR") at the time of the Assignment. (*See, e.g.*, Doc. 26-2 at 4).

Twelve days after the Assignment was executed, LSR filed the foreclosure action on behalf of BAC. The complaint filed in the foreclosure action contained a copy of Plaintiff's Note, Mortgage, and the Assignment. (Doc. 26-1 at 5–25). LSR eventually moved for summary judgment, and the state court awarded judgment to BAC. Plaintiff then retained new counsel and moved for relief from the judgment, arguing that the Assignment was invalid and seeking to depose Ms. Hill. BAC dismissed the foreclosure action, and the state court vacated its judgment.

Soon after the voluntary dismissal, Plaintiff brought this action against LSR, Ms. Hill, MERS, and Bank of America, N.A. ("BANA"), the successor in interest to BAC. (*See, e.g.*, Doc. 66 ¶ 5). Defendants moved to dismiss the complaint, and Plaintiff responded by seeking leave to amend to add a civil claim based on the Racketeer Influenced and Corrupt Organizations

Act ("RICO"), 18 U.S.C. §§ 1961–68. The District Court granted the motion to dismiss and denied the motion for leave to amend. (Doc. 31). The Sixth Circuit reversed and remanded to allow Plaintiff to amend and add his RICO claim. *Slorp*, 587 F. App'x at 266.

## B. The Documents and Communications at Issue

Plaintiff bases his RICO claim, the only remaining claim in this case, on the Assignment. He primarily contends that the Assignment was falsely executed because Countrywide Bank did not exist on July 9, 2010, the date on which Ms. Hill assigned Countrywide Bank's interest in the Mortgage to BAC, and because Ms. Hill did not have the authority from Countrywide Bank or MERS to execute the Assignment. At base, Plaintiff theorizes that Defendants took part in a scheme to foreclose on a fraudulently assigned mortgage.

In furtherance of his RICO claim, Plaintiff served written discovery on BANA and LSR. Plaintiff seeks what he broadly refers to as "documents evidencing" BANA's and LSR's "actions and communication" concerning Defendants' "entitlement to enforce Mr. Slorp's Note and Mortgage, [and] the steps taken by, transfer of funds, and communications among [Defendants] to effect fraudulent Assignments of Mortgage." (Doc. 82 at 6). For example, Plaintiff seeks written discovery related to contracts and agreements between Defendants that deal with foreclosure instructions; documents regarding LSR's authority to proceed with foreclosure against Plaintiff, as well as against other similarly situated homeowners; invoices and fee reports between the parties; documents and communications discussing the reason and strategy for the foreclosure of Plaintiff's property; documents evidencing any communication between Defendants in general; any documents or communications referring to Plaintiff's account; and communications and documents relating to endorsements of the Note and the authority of the various Defendants to assign the Note. (*See generally* Docs. 82-2, 82-13). Plaintiff also noticed

corresponding depositions for representatives of BANA, LSR, and MERS (*see* Docs. 90, 91, 92), which are the subject of the Supplemental Motion to Compel (Doc. 93).

### C. The Pending Motions to Compel

LSR and BANA objected to much of the written discovery (and to the corresponding depositions) on the basis of attorney-client privilege and the work-product doctrine. Plaintiff then filed his Motion to Compel. (Doc. 82). He also filed a Supplemental Motion to Compel (Doc. 93), asking the Court to apply its ruling on the attorney-client and work-product issues to the depositions of BANA's, LSR's, and MERS's respective corporate representatives, and to the objections to the written discovery that the he anticipates MERS will make. (*Id.*).

Rule 37 of the Federal Rules of Civil Procedure authorizes a motion to compel discovery when a party fails to respond to interrogatories under Rule 33 or requests for production under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). As a threshold requirement, the party moving to compel discovery must certify that it "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1); *see also* S.D. Ohio Civ. R. 37.1. This prerequisite has been met regarding Plaintiff's primary Motion to Compel. (*See* Doc. 82-1). Whether the requirement has been satisfied as to the Supplemental Motion to Compel is less clear. *Infra* at 13–14.

### II. STANDARD

Pursuant to Rule 26(b)(1) of the Federal Rule of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Plaintiff does not contest that the material he seeks is protected by attorney-client privilege and the work-product doctrine. Rather, he argues that the material is discoverable based on the crime-fraud exception or waiver. In federal court, federal

common law governs questions of privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Separate standards apply to Plaintiff's two bases for piercing the privilege.

**Crime-Fraud Exception**: The party claiming the crime-fraud exception must meet a two-prong test: "First, . . . make a *prima facie* showing that a sufficiently serious crime or fraud occurred to defeat the privilege; second, . . . establish some relationship between the communication at issue and the *prima facie* violation." *In re Antitrust Grand Jury*, 805 F.2d 155, 164 (6th Cir. 1986). Meeting this test requires "evidence . . . such that a prudent person [would] have a reasonable basis to suspect the perpetration of a crime or fraud." *United States v. Collins*, 128 F.3d 313, 321 (6th Cir. 1997); *see also In re Grand Jury Subpoenas*, 454 F.3d 511, 520 (6th Cir. 2006) ("Both [the attorney-client and work-product] privileges may be overridden . . . by the so-called crime-fraud exception . . . .").

**Waiver**: "[T]he party seeking protection . . . bears the burden of establishing the existence of the attorney client privilege as well as non-waiver of that privilege." *Liang v. AWG Remarketing, Inc.*, No. 2:14-CV-0099, 2015 WL 8958884, at *5 (S.D. Ohio Dec. 16, 2015); *see also In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983) ("The burden of establishing the existence of the privilege rests with the person asserting it.").

### III. DISCUSSION

A.  **The Crime-Fraud Exception**

The crime-fraud exception applies to communications between attorney and client "made for the purpose of getting advice for the commission of a fraud or crime." *United States v. Zolin*, 491 U.S. 554, 563 (1989) (internal quotation marks omitted). Plaintiff makes several arguments for why the crime-fraud exception applies here.

5

### 1. The District Court's Denial of the Motion to Dismiss

Plaintiff first points to the District Court's denial of Defendants' motions to dismiss. (*See* Doc. 62). Because he survived the pleadings stage, he argues that "it is indisputable that [he] made a *prima facie* showing of fraud and that the fraud is related to the facts alleged in the complaint and the information requested in [his] discovery requests." (Doc. 82 at 12). But simply alleging a crime is not enough to support a prima facie crime-fraud showing.

"[T]he attorney-client privilege and the work-product doctrine . . . are well-established and integral to the proper functioning of our legal system." *In re Grand Jury Subpoenas*, 454 F.3d at 519; *see Upjohn*, 449 U.S. at 389 ("The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."). Lifting the well-established privilege takes more than the mere allegation of fraud. *See Clark v. United States*, 289 U.S. 1, 15 (1933) ("It is obvious that it would be absurd to say that the privilege could be got rid of merely by making a charge of fraud."); *In re Grand Jury Subpoenas*, 454 F.3d at 519 (party seeking an exception to the work-product privilege "must make a preliminary showing"); *Williams v. Duke Energy Corp.*, No. 1:08-CV-00046, 2014 WL 3895227, at *6 (S.D. Ohio Aug. 8, 2014) ("The mere assertion that a crime or fraud has occurred is not enough to overcome a valid attorney-client privilege and work produc[t] claims.").

Pointing only to the pleadings and the denial of the motions to dismiss, as Plaintiff does with his first argument, is only an unsupported assertion that a crime or fraud has occurred. In denying the motions to dismiss, the District Court simply followed the Sixth Circuit's opinion holding that Plaintiff's RICO claim could proceed as pleaded. (*See* Doc. 62 at 4–5). Allegations in a pleading are not evidence, and without any evidence in support, the Court cannot conclude "that a prudent person [would] have a reasonable basis to suspect the perpetration of a crime or

fraud." *Collins*, 128 F.3d at 321; *see also Williams*, 2014 WL 3895227, at *6–11 (rejecting plaintiffs' argument that the Sixth Circuit's decision to allow their fraud claims to go forward was prima facie evidence sufficient to support the crime-fraud exception).

### 2. Ms. Hill's Authority to Assign the Mortgage on Behalf of MERS

Plaintiff also argues that Ms. Hill lacked the authority to execute the Assignment, and that her lack of authority is prima facie evidence of fraud. (Doc. 82 at 13). In support, he notes that Defendants produced agreements between MERS and other entities, which expressly gave Ms. Hill the authority to execute assignments for MERS, but Defendants did not produce a similar agreement between MERS and Countrywide Bank. (*See* Doc. 82-15 (Agreement for Signing Authority for Ms. Hill to act on behalf of MERS as nominee for BAC); Doc. 82-11 (same as to Countrywide Home Loans, Inc.)). Plaintiff argues that without an express agreement "granting Ms. Hill authority from Countrywide Bank, FSB (the transferor) to transfer an interest in the mortgage," Plaintiff asserts that "the Assignment of Mortgage is invalid." (Doc. 82 at 4). At base, Plaintiff's smoking gun on this point is the absence of evidence.

Defendants, however, have offered evidence to support their position that Ms. Hill indeed had authority to execute the Assignment for MERS on behalf of Countrywide Bank. (*See, e.g.*, Doc. 75-1 (affidavit of Ms. Hill stating that she had authority to execute the Assignment as an appointee of MERS); Doc. 78-1 at 11–13 (the Mortgage, stating that MERS was the Mortgagee to the property at issue and thus had to the right to "foreclose and sell the Property")); (*see also id.* at 1–3 (affidavit of BANA representative Susan Magaddino averring that MERS had the authority to assign the Mortgage)). Accordingly, Plaintiff has not met the prima facie evidentiary burden for the crime-fraud exception on this point.

### 3. Countrywide Bank Was No Longer in Existence at the Time of Assignment

Plaintiff next argues that the attorney-client veil should be pierced because Countrywide Bank was no longer in existence when the Mortgage was assigned. Though Plaintiff is factually correct, *see Thompson v. Bank of Am., N. Am.*, 773 F.3d 741, 749 (6th Cir. 2014) ("Countrywide Bank FSB was purchased by BOA in 2008."); (*see also* Doc. 78-1 at 2, 30), the law does not support his argument. The Mortgage expressly states that MERS held legal title to the interests in the Mortgage (*see* Doc. 26-1 at 11), including the ability to assign the Mortgage. *See Hargrow v. Wells Fargo Bank N. Am.*, 491 F. App'x 534, 538 (6th Cir. 2012) ("Here, MERS was unambiguously the original mortgagee of the Hargrows' Mortgage. The Hargrows granted MERS the power to assign the Mortgage, and MERS used that power to assign the Mortgage to Wells Fargo." (footnote omitted)). As such, an assignment is still valid regardless of whether the mortgagee or original lender exists at the time of assignment. *See Handfield v. Wells Fargo Bank, N. Am.*, No. 1:12-CV-01080-RWS, 2013 WL 1501942, at *6 (N.D. Ga. Jan. 23, 2013) ("This Court is unaware of any legal authority that would invalidate the assignment from MERS to Wells Fargo, simply because Utah Financial, the original lender, was defunct."); *see also Kiah v. Aurora Loan Servs., LLC*, No. CIV.A. 10-40161-FDS, 2011 WL 841282, at *4 (D. Mass. Mar. 4, 2011).

### 4. Additional Allonges to the Promissory Note

Next, Plaintiff pivots, focusing not on the propriety of the Assignment, but on the Note itself.[1] Plaintiff points out that the original Note attached to the foreclosure complaint differs from the version attached at summary judgment in the state-court action in a crucial way. The

---

[1] Though the Note is not relevant to Plaintiff's RICO claim as pled, the Note is now at issue because BANA argued in its summary judgment motion (Doc. 76) that even if the Assignment were somehow fraudulent, the foreclosure was proper because BANA was the actual holder of the Note at the time of the foreclosure. *Id.* (citing *Nationstar Mortgage LLC v. Cruse*, No. 2:14-CV-383, 2015 WL 5174640, at *4 (S.D. Ohio Sept. 4, 2015) ("Because Nationstar has the note in its possession and it is indorsed to bearer, it is the holder of the note and is a person entitled to enforce the note.")). To counter BANA's defense, Plaintiff contests the validity of the Note.

original Note, he argues, was made out to Countrywide Bank and it contained no endorsements or alloges. The version of the Note attached at summary judgment, however, included an allonge transferring an interest in the Note from BANA, on behalf of Countrywide Bank, to BAC. (*See* Doc. 82-15 at 153–54). And during discovery in this case, an additional allonge surfaced, which was signed by a different BANA representative and again transferred interest in the Note to BAC. Under Plaintiff's theory, the different versions of the Note, which emerged at different times in different cases, demonstrate Defendants' fraud.

Filing two different versions of the Note at issue (in two different cases)—one with endorsements and alloges and one without—says nothing about the authenticity of the Note. *See Bridge v. Ocwen Fed. Bank FSB*, No. 1:07 CV 2739, 2013 WL 4784292, at *7 (N.D. Ohio Sept. 6, 2013) ("The mere fact that there were two different copies of the note in the record—one with endorsements and one without—does not mandate a finding that one of the notes was 'unauthentic' . . . ."). It also does not indicate that BAC did not actually hold the note at the time of foreclosure. Nor does it rise to the level of prima facie showing necessary for the crime-fraud exception. *See id.* at *7 ("Plaintiffs advance multiple theories about why there are two copies, suggesting conspiracies and nefarious acts. However, there are no facts that lend support to those theories.").

Further, Defendants offer evidence to rebut Plaintiff's theory. According to an affidavit from Susan Magaddino, a BANA employee with knowledge of the records at issue, "it is not unusual for there to be multiple copies of the same promissory note in BANA's records." (Doc. 78-1 ¶ 9); (*see id.* ("It appears the copy of the Note filed in the Foreclosure Action is from the closing file. This is the copy of the loan documents as they exist after being executed at the loan closing. The copy of the Note from the closing file would not contain any endorsements because

9

it is a copy of the Note on the day it was signed.")). For these reasons, the crime-fraud exception does not apply.

### 5. In Camera Review

In the alternative, Plaintiff argues for an in camera review of the allegedly privileged material. Even an in camera review requires a minimum showing of evidence indicating the possibility that the crime-fraud exception might apply. *See In re Grand Jury Subpoenas*, 454 F.3d at 520 ("Thus, even inspections by the district judge, which do not destroy privilege, require a prior showing that is weakly analogous to probable cause."). Plaintiff has had many months to conduct discovery in this case, meaning he has had the opportunity to compile evidence to support the crime-fraud theory. Despite this, he has not presented any evidence indicating the probability, or even possibility, of a qualifying crime, or that the communications at issue were made with an intent to further a crime or fraud. *See, e.g.*, *In re Antitrust Grand Jury*, 805 F.2d at 168 ("[M]erely because some communications may be related to a crime is not enough to subject that communication to disclosure; the communication must have been made with an intent to further the crime.").

Further, opponents of the attorney-client privilege need to give reviewing courts some basis in the record to conduct an in camera review, both to justify the burden of the review and to prevent the Court from going on a fishing expedition on behalf of the opponent. *See, e.g.*, *Zolin*, 491 U.S. at 571 ("There is no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents."); *id.* at 572 ("Before engaging in in camera review to determine the applicability of the crime-fraud exception, 'the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person,' that in camera review of the materials may reveal

10

evidence to establish the claim that the crime-fraud exception applies." (citation omitted)). Plaintiff has offered the Court no guidance on conducting an in camera review, and the Court declines to engage in an exploratory mission without parameters.

**B. Waiver of Attorney-Client Privilege and the Work-Product Doctrine**

Plaintiff next argues that LSR and BANA waived the attorney-client privilege and work-product doctrine when they disclosed sensitive, client-related information to Ms. Hill in her capacity as a signer for MERS. Importantly, Plaintiff does not argue privilege does not apply generally to the communications at issue. Instead, he contends that by disclosing privileged information to Ms. Hill in her capacity as a MERS employee, BANA waived privilege.

In support of privilege, Defendants provided privilege logs detailing the withheld documents. (*See* Docs. 82-3, 82-14, 89-1). Planitiff argues, at a high level of generality, that the privilege logs indicate that BANA communicated with LSR regarding the foreclosure. (Doc. 82 at 7). This, however, does not indicate privileged communication between BANA and Ms. Hill, and the logs are insufficient to demonstrate waiver. *See Liang*, 2015 WL 8958884, at *6 ("[S]imply identifying the general subject matter of the communication [in a privilege log] will not serve to waive the attorney-client privilege."). In short, nothing in the logs indicates that the privilege has been waived.

Plaintiff also relies on Ms. Hill's deposition from an unrelated case in the Franklin County Court of Common Pleas. (*See* Doc. 82-15 at 235–54). Ms. Hill testified, in part, that she executed assignments in her capacity as a MERS vice president and assistant secretary. (*See* Doc. 26-2 at 10–11). Plaintiff argues that because Ms. Hill signed the documents on behalf of MERS, not the law firm that employed her, Ms. Hill was technically a third party at the time of signing. Based on this, Plaintiff argues, BANA waived the attorney-client privilege when LSR

disclosed Plaintiff's file to Ms. Hill for the purpose of the Assignment.  But reliance on a deposition that is both equivocal on the privilege issue and from a different case in 2010 is not evidence of waiver *in this case*.  (*See* Doc. 26-2 at 14 (Ms. Hill testifying that she "only" reviewed "[t]he assignor and assignee name," "typographical errors," whether her "name is spelled right and that the signature line is listed correctly"); *but see id.* at 13 (Ms. Hill testifying that she reviewed the "mortgage, a title, . . . and any other communication," like "Emails," regarding the mortgage she assigns)).  Ultimately, the Court has no evidentiary basis to conclude that the privilege was waived as to any Note- or Mortgage-related communications in this case.

Beyond this, Defendants argue that the attorney-client privilege is the client's to waive, not the attorney's.  *See Mason v. Mitchell*, 293 F. Supp. 2d 819, 823 (N.D. Ohio 2003).  A client can affirmatively waive the privilege by "voluntary disclosure of private communications," or passively, "by conduct which implies a waiver of the privilege or a consent to the disclosure."  *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002).  Defendants argue that there is no evidence indicating that the client at issue in this case, BANA, waived the privilege, or that BANA's conduct ratified the waiver of the privilege.

The Court agrees.  To the extent any evidence on this issue exists, it affirms Defendants' position.  For example, in her unrelated deposition from the Franklin County case, Ms. Hill testified that, in the ordinary course, LSR "receives a . . . foreclosure referral" from LSR's "client" (Doc. 26-2 at 11); and that LSR employees review the relevant documents and prepare the assignments (*see* Doc. 82-15 at 246).  In other words, the evidence indicates that BANA sends its attorneys a foreclosure referral with the idea that its attorneys would take the necessary steps to facilitate a foreclosure.  Only then do BANA's attorneys make the choice to involve

MERS in executing the assignment. There is no further evidence of BANA acting in a way that ratified the disclosure, meaning that its attorneys alone cannot have waived the privilege.[2]

In reaching this conclusion, the Court notes that the relationship between Defendants as it pertains to the Assignment and the invocation of privilege gives it pause. In a different case involving LSR under similar circumstances, Judge Reece of the Franklin County Court noted:

> This Court admits that it is somewhat concerned about a practice which threatens to shield elements of otherwise discoverable transactions from discovery by having those transactions take place within a lawfirm carried out by a lawfirm employee who has obligations of loyalty to both parties in the transaction.

(Doc. 82-22 at 3). Though the Court likewise finds the practice somewhat concerning, it has no basis beyond Plaintiff's conjecture to believe that the privilege was abused or waived in this particular case.

## C. The Supplemental Motion to Compel

Plaintiff asks the Court to apply its ruling on the attorney-client and work-product issues to the depositions of BANA's, LSR's, and MERS's respective corporate representatives, and to the objections to the written discovery that Plaintiff anticipates MERS will make. (Doc. 93). Accordingly, the Supplemental Motion, as to BANA and LSR, is **DENIED**.

As to MERS, the Supplemental Motion is **DENIED** as premature. MERS's discovery responses to Plaintiff's requests are not due until March 31, 2016, which is today. Accordingly,

---

[2] Defendants make a number of additional arguments in favor of preserving the attorney-client privilege. For example, they argue that Ms. Hill executed the Assignment in her role both as an employee of MERS and of LSR, meaning that the privilege remained intact because she was also acting as an agent of the law firm. The record is somewhat unclear on this point. (*See* Doc. 82-15 at 243; *but see* Doc. 82-13 at 19). Defendants also argue that all parties had the same legal interest in the transaction, meaning their communications remained privileged by virtue of the common-interest doctrine. *See Cooey v. Strickland*, 269 F.R.D. 643, 652 (S.D. Ohio 2010) ("The common-interest doctrine also operates to protect information disclosed to other parties, expanding coverage of the attorney-client privilege to include situations in which two or more clients with a common interest in a matter agree to exchange information regarding the matter."). The record is not developed enough for the Court to rule on the common-interest argument at this time. Regardless, because the Court finds the privilege remains intact, it need not resolve these issues.

the Supplemental Motion as to MERS is not ripe for review. *See NetJets Large Aircraft, Inc. v. United States*, No. 2:11-CV-1023, 2014 WL 1672588, at *11 (S.D. Ohio Apr. 28, 2014) ("[C]ourts often wait to decide issues of privilege until they have specific questions or facts before them."). In addition, MERS argues that Plaintiff should pay its reasonable fees and expenses pursuant to Fed. R. Civ. P. 37(a)(5)(B) for failing to meet Rule 37(a)(1)'s requirement for a good faith effort to settle discovery issues before involving the Court. *See also* S.D. Ohio Civ. R. 37.1. The Court finds that such an award would be unjust and **DENIES** MERS's request. The Supplemental Motion was premature, but Plaintiff made clear that it was filed "in light of Defendants' firm objections regarding allegedly privileged information and documents, the pending Motion to Compel, and the fast-approaching discovery deadline." (Doc. 93 at 2). The Court understands that Plaintiff's counsel was attempting to act in a manner that was most efficient for all parties. The Court does, however, advise counsel to comply with Rule 37(a)(1) and S.D. Ohio Civ. R. 37.1 in the ordinary course.

## IV. CONCLUSION

For the reasons stated, the Motion to Compel (Doc. 82) and Supplemental Motion to Compel (Doc. 93) are **DENIED**.

## V. MOTION TO RECONSIDER

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Eastern Division Order No. 14-01, pt. IV(C)(3)(a). The motion must specifically designate the Order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are

due seven days after.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This Order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio Civ. R. 72.3.

IT IS SO ORDERED.


Date: March 31, 2016                                       /s/ Kimberly A. Jolson
                                                          KIMBERLY A. JOLSON
                                                          UNITED STATES MAGISTRATE JUDGE