UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICK A. SLORP,

    Plaintiff,

v.

LERNER, SAMPSON & ROTHFUSS, *et al.*,

    Defendants.

CASE NO. 2:12-CV-498
CHIEF JUDGE EDMUND A. SARGUS, JR.
MAGISTRATE JUDGE KIMBERLY A. JOLSON

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment (ECF No. 123); and the Motions for Summary Judgment of Defendants Bank of America, N.A. ("BANA") (ECF No. 121); Mortgage Electronic Systems, Inc. ("MERS") (ECF No. 122); and Joint Motion for Summary Judgment of Defendants Lerner, Sampson & Rothfuss ("LSR") and Shellie Hill ("Ms. Hill") (ECF No. 120), pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court **DENIES** Plaintiff's motion, and **GRANTS** Defendants' motions.[1]

### I.

Plaintiff moves for summary judgment on a single claim for relief under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68. (Sec. Am. Compl., ECF No. 26.) Defendants likewise move for summary judgment. This case proceeds following a remand from the Sixth Circuit, which upon *de novo* review held that, taken as true as Plaintiff's allegations must be under Rule 12(b)(6), Plaintiff had presented sufficient allegations to litigate his RICO claim. The facts of this case are discussed in detail in the Sixth Circuit's unpublished opinion, *Slorp v. Lerner, Sampson & Rothfuss*, 587 Fed. App'x. 249 (6th Cir. 2014).

---

[1] Defendants MERS and BANA also move to strike unauthenticated and hearsay documents. (ECF Nos. 124, 133.) This Court **DENIES** the motion as moot in light of this opinion.

Briefly, Plaintiff signed a Note payable to Countrywide Bank FSB ("Countrywide") on December 14, 2007, and executed a mortgage providing a security interest in his home in Dublin, Ohio. This case relates to alleged misconduct in a state-court foreclosure action. LSR filed a foreclosure action on behalf of its client, BANA, on July 21, 2010. At issue was the question of whether a purported assignment of Plaintiff's mortgage from Countrywide to BANA was valid. The state court awarded judgment to BANA. Plaintiff retained counsel, who questioned the assignment's validity, and he sought to depose Ms. Hill, the LSR employee who had executed the assignment. BANA "promptly dismissed the foreclosure action, and the state court vacated its judgment." *Id.* Plaintiff then filed this lawsuit against the Defendants to recover the attorney's fees he spent contesting the foreclosure action. Defendants moved to dismiss the complaint, and Plaintiff sought leave to amend the complaint to add a civil claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § § 1961-68. This Court granted the Defendants' motions to dismiss and denied Plaintiff's motion for leave to amend the complaint to add the RICO claim, finding that such an amendment would be futile because the Court found that Plaintiff had not alleged any cognizable injury. Plaintiff appealed to the Sixth Circuit.

The Sixth Circuit affirmed the dismissal of the four claims in the original complaint, but remanded the case to this Court with "instructions to permit Slorp to amend his complaint to add a RICO claim." *Id.*, at 262. In doing so, the Sixth Circuit explained that "[t]he denial of a motion to amend the complaint ordinarily is reviewed for abuse of discretion. *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 743 (6th Cir. 2002). When denial is on the basis of futility, however, the decision is reviewed *de novo.*" *Id.* On *de novo* review, the Sixth Circuit set forth the allegations required to successfully plead a sufficient RICO complaint in this instance, stating

> "[t]he germane provision of RICO makes it unlawful for a person employed by or associated with an enterprise that affects interstate commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c)."

2

*Id.*

As the Sixth Circuit explained, "[a] successful RICO plaintiff must establish that the defendants engaged in a 'pattern of racketeering activity.'" 18 U.S.C. § 1962(c); *see also In re ClassicStar Mare Lease Litig.,* 727 F.3d 473, 484 (6th Cir. 2013). The Court then discussed what this entails:

> To establish a pattern of racketeering activity, the plaintiff must allege at least two related acts of racketeering activity that amount to or pose a threat of continued criminal activity. *Brown v. Cassens Transp. Co.,* 546 F.3d 347, 354 (6th Cir.2008). The RICO statute enumerates dozens of crimes that constitute racketeering activity. *See* 18 U.S.C. § 1961(1). Among these crimes are mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343—the two predicate crimes that Slorp alleged in his proposed amended complaint. Mail and wire fraud consist of (1) a scheme or artifice to defraud; (2) use of the mails or interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property. *United States v. Turner,* 465 F.3d 667, 680 (6th Cir.2006); *United States v. Daniel,* 329 F.3d 480, 485 (6th Cir.2003). "A scheme to defraud is any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises." *United States v. Faulkenberry,* 614 F.3d 573, 581 (6th Cir.2010) (internal quotation marks and alterations omitted).

*Id.*, at 264-65.

In considering the Rule 12(b)(6) motion, the Sixth Circuit concisely set forth the gravamen of this case under the RICO provision at issue:

> "The defendants argue that 'it was his mortgage default . . . which caused Slorp to have to defend the foreclosure action, not anything contained within the Assignment.' But the factual premise of this argument contradicts the factual allegations in Slorp's complaint and overlooks our obligation to assume the veracity of those allegations. Slorp alleges that the assignment was fraudulent and that the defendants had no right to foreclose on his house. *If the defendants were not authorized to initiate the foreclosure proceedings, Slorp's injuries were caused by their fraud rather than his own alleged default."*
>
> \*\*\*
>
> *"To be sure, Slorp's injuries will vanish if the defendants prove that Bank of America was the legitimate mortgagee.* But this case came to the district court on a motion to dismiss, and in that posture the court was required to accept the veracity of Slorp's factual allegation. Slorp alleges injuries to his property that were proximately caused by the defendants' allegedly baseless initiation of foreclosure proceedings and the fraudulent assignment of his mortgage. He is thus entitled to recover damages for those injuries unless he fails to satisfy his evidentiary burden, either on summary judgment or at trial."

*Id.*, at 263-64 (emphasis supplied). With these key elements in mind, this Court now turns to consider the evidence presented by the parties on summary judgment.

## II.

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material facts exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 486 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### B. Plaintiff's RICO Claim

To establish a RICO violation, Plaintiff must show "1) two or more predicate offenses as evidence of a pattern of racketeering activity; 2) the existence of an 'enterprise'; 3) a nexus between the enterprise and the pattern of racketeering activity; and 4) an injury to business or property from the first three elements." *Snowden v. Lexmark Int'l, Inc.*, 237 F.3d 620, 621 (6th Cir. 2001). Additionally, Plaintiff must establish that each defendant participated in the operation and management of the enterprise, not merely in the scheme. *Thermodyn Corp. v. 3M Co.*, 593 F.Supp.2d 972, 980 (N.D. Ohio 2008). As the Sixth Circuit stated, "[T]o be sure, Slorp's injuries will vanish if the defendants prove that Bank of America was the legitimate mortgagee." *Slorp*, 587 Fed. App'x., at 264. Thus, the question of whether BANA was "the legitimate mortgagee" is the central issue.

BANA asserts that it was the legitimate mortgagee because (1) Defendant Ms. Hill had express, written authority to execute the Assignment on behalf of Defendant MERS, regardless of her status as an employee of LSR; and (2) it is irrelevant whether the originating lender, Countrywide Bank FSB ("Countrywide") was "out of business" at the time the Assignment was executed, because the Mortgage itself conferred authority on MERS to assign the mortgage, regardless of the status of Countrywide. (ECF No. 121, at 1.) Defendant's arguments are well taken, and supported by the evidence in the record.

#### 1. The Loan

The following facts are not disputed. On December 14, 2007, Plaintiff borrowed $185,000 from Countrywide and signed a Note agreeing to repay the loan. *See* Deposition of Rick A. Slorp ("Slorp Depo.") at 46-48, 61 & Exh. 2 (excerpts attached as Exh. 1, ECF No. 122.) In addition, on that same day, Plaintiff signed a Mortgage (the "Mortgage") granting a security interest in his home in Dublin, Ohio (the "Property"). *Id*. at 67-69 & Exh. 3. The Mortgage named Countrywide Bank as the Lender, and named MERS as the Mortgagee. *See* Declaration of Brian Blake ("Blake Decl."), ¶10 & Exh. 3, p. 2 (attached as Exh. 2, ECF No. 122.) The Mortgage specifically provides that "MERS is a

5

separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the Mortgagee under this Security Instrument." *Id.* The Mortgage signed by Plaintiff granted certain rights and obligations to MERS:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in the security instrument but if necessary to comply with law or custom, MERS (as nominee for Lender and Lenders successors and assigns) has the right to exercise any and all of those interests, including but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

*Id.* at Exh. C, p. 3. The Mortgage further provides and Plaintiff agreed that "Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS" the Property. *Id.* Plaintiff admitted that he signed the Mortgage and understood that he was bound by its terms. Slorp Dep. at 235 (Exh. A, ECF No. 131.) Thus, when Plaintiff signed the Mortgage, he agreed that MERS would be the nominee on behalf of Countrywide Bank, and on behalf of Countrywide Bank's successors and assigns. [2]

MERS provides a system that allows its members, including originators, lenders, servicers, and investors, to track the transfer of servicing rights and beneficial ownership of loans registered with MERS.[3] Plaintiff's loan was registered on MERS's system. Blake Decl., at ¶6.

---

[2] Plaintiff contends that Fannie Mae is the "investor of the loan, is the owner of the loan, and is the entity that holds beneficial interest in the loan." (ECF No. 123, at 2.) Nowhere is Fannie Mae mentioned in the pleadings, and the Court will not enlarge the pleadings at this stage of the proceedings. However, as explained in this Opinion, Fannie Mae's ownership interest does not limit the servicer's legal authority to enforce the Note.

[3] MERS' business is described as follows:

> MERS administers an electronic registry to track the transfer of ownership interest and servicing rights in mortgage loans. With respect to certain loans of which its members are the beneficial owners, MERS also serves as mortgagee of record and holds legal title to the mortgages in a nominee capacity. MERS remains the mortgagee of record when beneficial ownership interests or servicing rights are sold from one member of the MERS system to another. When the beneficial interest in a mortgage loan is transferred from one member of the MERS system to another, MERS tracks the transfer through its internal records. When rights are transferred from a member of the MERS system to a

6

Countrywide Home Loan Servicing, LP ("CHLS"), the servicing arm of Countrywide initially serviced the mortgage and loan. (Zacharay Chromiak Deposition, "Chromiak Dep.", excerpts attached as Exhibit C, pp. 19, 67, ECF No. 121.) Thereafter, CHLS changed its name to BAC in April 2009. (Susan Magaddino Aff. at ¶8, Exh. A-5, ECF No. 121.) The only change that followed was in the name of the servicer. (Id.) BANA asserts, and Plaintiff provides no evidence to the contrary, that Countrywide did not "go out of business." Rather, it merged into BANA in 2009. (Susan Magaddino Deposition, "Magaddino Dep.", excerpts attached as Exh. D, p.82, ECF No. 121.) In July, 2011, BAC merged with and into BANA. (Magaddino Aff. at ¶9, and Exh. A-6, ECF No. 121.) Plaintiff does not dispute that he made payments to BANA for a period of time after the name change. (Slorp Dep. at p. 55.) However, Plaintiff decided to stop making his mortgage payments altogether because Countrywide "went out of business." (Id.) Although Plaintiff concedes he was obligated under the Note to make monthly payments beginning in February 2008, for a period of 30 years, he defaulted on his loan when he stopped making payments on the Mortgage in early 2010. (Exh. A-1, ¶3, ECF No. 121; Slorp Dep. at p. 51.) The loan provides that a failure to make a payment on time and in the proper amount constitutes a default. (Exh. A-1, at ¶6(B), ECF No. 121). Plaintiff does not contest that he stopped paying on the loan, and thus was in default.

---

non-member, MERS executes and records an assignment from MERS to the non-member.

To facilitate the execution of the assignments from MERS, MERS designates "certifying officers," who are typically employees of MERS member firms. MERS authorizes these employees, through formal corporate resolutions, to execute assignments on behalf of MERS.

In re Moreno, No. 08-17715, 2010 Bankr. LEXIS 1558 at *4-5 (D. Mass. May 24, 2010).

## 2. MERS

The Sixth Circuit has held that when a Mortgage grants MERS the "right to exercise the interests created by the Mortgage 'including but not limited to' certain delineated rights and the general right to sell the Note . . . we deem the Mortgage as creating a right of assignment" as to MERS. *Hargrow v. Wells Fargo Bank, N.A.*, 491 Fed. App'x. 534, 538 n. 3 (6th Cir. 2012). In the case *sub judice*, Plaintiff's Mortgage contains the identical language and granted MERS the right and ability to assign the Mortgage as nominee for the lender and the lender's successors and assigns. Therefore, MERS had the right and ability to assign the mortgage to BAC, and ultimately to BANA.[4]

Plaintiff asserts that MERS could not assign the mortgage because the original lender, Countrywide, "did not exist at the time of the assignment." (ECF No. 136, at 2.) Courts have uniformly rejected this argument, holding that it is legally irrelevant whether the originating lender was out of existence at the time MERS assigned the mortgage. *See Ghuman v. Wells Fargo Bank, N.A.*, 989 F.Supp.2d 994, 1001 (E.D. Ca. 2013) ("the fact Lender became defunct did not strip MERS' authority to act under the Deed of Trust"); *Handfield v. Wells Fargo Bank, N.A.*, No. 12-cv-01080, 2013 WL 1501942, at *6 (N.D. Ga. Jan. 23, 2013) ("This Court is unaware of any legal authority that would invalidate the assignment from MERS to Wells Fargo, simply because Utah Financial, the original lender, was defunct"); *Kiah v. Aurora Loan Services, LLC.*, No. 10-40161-FDS, 2011 WL 841282, at *4 (D. Mass. Mar. 4, 2011) ("dissolution would not prevent its successors and assigns . . . from seeking transfer of the mortgage from MERS"). Plaintiff's arguments on this ground do not avail.

## 3. BANA

Plaintiff also asserts, belatedly, that BAC was not the owner of the loan at the time of the foreclosure. (ECF No. 123, at 2.) This argument is also unavailing. Ohio law looks to whether a party

---

[4] The Sixth Circuit has stated that BAC and BANA merged effective July 1, 2011. *See Downey v. Fed. Nat'l Mortgage Assoc.*, No. 13-2225, (6th Cir. Nov. 4, 2014) (slip. op. at 5).

is entitled to "enforce" the instrument: "[t]he right to enforce the instrument and ownership of the instrument are two different concepts." O.R.C. § 1303.22 (U.C.C. § 3-203), Official Comment 1. "A person who has an ownership right in an instrument might not be a person entitled to enforce the instrument." *Id.* Ohio courts have recognized that "because a promissory note is transferred through the process of negotiation, ownership is not a requirement for enforcement of the note." *U.S. Bank, N.A. v. Coffey*, 6th Dist. Erie No. E-11-026, 2012-Ohio-721, ¶20; *Bank of Am. v. Melo*, 11th Dist. Trumbull No. 2012-T-0103, 2013-Ohio-5266, ¶15. Thus, the holder of the note, not the owner, is the real party in interest in a foreclosure action. *CitiMortgage Inc. v. Patterson*, 984 N.E.2d 392, 2012-Ohio-5894, ¶22 (8th Dist. 2012).

BANA's representative testified that BANA (having merged with BAC fka Countrywide), was the holder of the Note, having been in continuous possession of Plaintiff's original note from a few days after loan origination in December, 2007 until after the Foreclosure was filed, through its repository, Recon Trust Company, N.A. (Magaddino Aff., ¶ 7; Magaddino Dep., p.82.) There is no evidence in the record to contradict this assertion. Recon Trust's representative, Ms. Garner, testified at deposition that Recon Trust, as document custodian of Plaintiff's note for Countrywide (and custodian for BAC and BANA), held the note in its vault from December, 2007, until February, 2012, when it was delivered to the servicer, BANA:

> Q. At that point in time [December 27, 2007], using the company that existed, who was Recon Trust holding this note for as custodian pursuant to your records?
> A. It would have been Countrywide Bank.
>
> * * *
>
> Q. Okay. What was the first date that Recon – that Recon Trust or Treasury Bank acquired actual physical possession of the note?
> A. So we received the original note – based on this screen, we received the original note in December of 2007.
>
> * * *
>
> Q. Okay. And according to your records, did that note remain in the vault until sometime in 2012?

9

> A. It remained in our custody until December – I'm sorry – until February 2012.
>
> * * *
>
> Q. Now, is it your belief, based upon the policy, that all of the endorsements would have been placed on the note before it went in the vault – or on or about that time?
> A. That is my belief.

(Garner Dep., p. 19, lines 22-25; p. 54, lines 13-18; p. 55, lines 22-25; p. 64, lines 16-20; ECF No. 120, Exh. 4.) Plaintiff also had an opportunity to inspect the original note at his deposition held on April 7, 2015. His testimony verified his blue ink signature on the original note:

> Q. Let's just move forward, okay? Let's turn your attention back to this original document –
> A. Okay.
>
> Q. -- for which Exhibit 2 is a copy, a document called Note, okay? I'm placing it in front of you. I've flipped it to page two. Does that look like an original blue ink signature to you?
> A. It appears to be, yes.

(Slorp Dep., p. 61, lines 6-13.) Interestingly, Plaintiff concedes that "the business records and testimony of both BANA and Recon Trust show that the note was in the vault at all relevant times." (ECF No. 123, at p. 26.) As holder of the note, BANA was the proper entity to enforce Plaintiff's note. *See U.S. Bank Nat'l. Assn. v. Gray,* Ct. App. No. 12AP-953, 2013-Ohio-3340, ¶¶ 31-34 (recognizing that the transfer of a note automatically results in equitable assignment of a mortgage securing the note).

Plaintiff's theory of the case is that Defendants schemed to defraud Plaintiff "around the time they filed the foreclosure complaint against Mr. Slorp." (ECF No. 135, at 2.) Under Plaintiff's theory, BANA had no standing to file the foreclosure, because "[t]he note attached to the complaint had no indorsements and no allonges and was still payable to Countrywide Bank." (*Id.*) However, the uncontradicted testimony of Mr. Zachary Chromiak is that the three endorsement stamps were present on the original Note not later than April of 2009, and thus prior to the foreclosure action. Mr.

Chromiak was asked whether it was possible that the endorsements first appeared on the original note in February 2012, and he explained that it was not possible:

> A. The endorsement stamps on the original note are from Countrywide Bank, FSB, and I believe – where's the – where is the – I'll find it. There's a stamp from Countrywide Bank, FSB to Countrywide Home Loans, Inc., back to Countrywide Bank FSB, and then it's blank from Countrywide Bank, FSB. Those stamps weren't being used in 2012. In fact, there wouldn't be a Countrywide stamp used after, at the very latest, April 27th, 2009. And this loan wasn't removed from the vault between 2007 and 2012.

(Chromiak Dep. at pp. 63-64.)  There is no evidence to contradict the fact that the original note had been endorsed, and was ultimately endorsed in blank.  Rather, the evidence establishes that the Note was endorsed in blank (making it bearer paper) and that it had been in BAC or its agent's possession at all times since December 2007, and thus BAC had possession of the note and was a party entitled to enforce the Note at the time of the Foreclosure Action. (Magaddino Aff. at ¶ 7, Exh. A-7, ECF No. 121.) Plaintiff has merely presented facts indicating that the note attached in the original foreclosure action was incomplete, rather than fraudulent.  The Defendants have explained the endorsements and the Plaintiff has not provided any evidence to the contrary on which any reasonable inference could be drawn in his favor.

Recon Trust was the agent for BAC and BANA and it had uninterrupted possession of the Note from December 27, 2007 through 2012, prior to and during the Foreclosure Action. (Garner Dep. at p. 54.)  Under well-settled Ohio law, constructive possession exists when an agent holds the note on behalf of the party entitled to enforce.  Consequently, a person is a holder of a negotiable instrument, and entitled to enforce the instrument, when the instrument is in the physical possession of his or her agent, under the theory of constructive possession. *See U.S. Bank Nat'l. Assn., supra,* 2013-Ohio-3340, at ¶ 25. "Under Ohio law, possession of either the note or the mortgage gives a party standing to foreclose." *Clark v. Lender Processing Servs.*, 562 Fed. App'x. 460, 466 (6th Cir. 2014).

11

Plaintiff asserts that, "to have standing [to bring the foreclosure action] BANA must 'show that at the time the complaint was filed it possessed the original note either made payable to bearer with a blank endorsement or made payable to order with an endorsement specifically to [plaintiff].'" *Fed. Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 19, 2012-Ohio-5017, 979 N.E.2d 1214, 1220, ¶ 27. (ECF No. 135, at 2.) BANA has proceeded to make such a showing.

### 4. The Assignment

Ultimately, the Mortgage was assigned by MERS to BAC on July 9, 2010. (Exh. A-4, ECF No. 121.) Prior to executing the Assignment, MERS, BAC, and LSR executed an Agreement for Signing Authority (the "Agreement") (Magaddino Aff. at ¶¶ 12-13, Exh. A-8, ECF No. 121.) The assignment was executed by Ms. Hill, a paralegal employed at LSR, who was appointed assistant secretary and vice president of MERS pursuant to a Corporate Resolution dated June 19, 2009. (Shellie Hill Aff., ¶ 2, ECF No. 75-1, Exh. A.) The Corporate Resolution from MERS granted Ms. Hill certain authority to act on its behalf. (*Id.*) That included authority to "[e]xecute any and all documents necessary to foreclose upon the property securing any mortgage loan registered on the MERS System that is shown to be registered to [BAC]" and to "[a]ssign the lien of any mortgage loan registered on the MERS System that is shown to be registered to BAC or its designee." (*Id.*) At the time Ms. Hill executed the Assignment, it was registered to BAC on the MERS System. (Magaddino Aff. at ¶ 14, Exh. A-9.) There is no evidence to support Plaintiff's assertion that Ms. Hill was not authorized to execute the Assignment on behalf of MERS.[5]

---

[5] Plaintiff asserts that Ms. Hill lacked authority to execute the assignment because she "knew that Countrywide did not exist at the time she executed the assignment." (ECF No. 123, at 21.) This argument is unavailing. As discussed *supra*, the evidence shows that Countrywide changed its name to BAC, and BAC merged into BANA.


### 5. The Foreclosure Action

The evidence establishes that BANA had standing to foreclose in the Foreclosure Action. As discussed above, BANA had standing because it was the holder of the Note, and also had standing because the assignment of the note was authorized by MERS, the nominee of BAC.

### III.

Under RICO, "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Douglas v. Ratliff*, No. C-109-60, 2009 WL 3378672, at *3 (N.D. Ohio Oct. 20, 2009) (qoting *Sedima, S.P.R.I. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The Sixth Circuit explained that Plaintiff's injuries "would vanish" if the Defendants prove that BANA was the legitimate mortgagee. Here, there is no genuine issue of material fact. The evidence establishes that BANA was a party entitled to enforce the Note when it filed the Foreclosure Action. Thus, Plaintiff's RICO claim must fail.

### IV.

Accordingly, the Court **GRANTS** the Motions for Summary Judgment of Defendants Bank of America, N.A. (ECF No. 121); Mortgage Electronic Systems, Inc. (ECF No. 122); and the Joint Motion for Summary Judgment of Defendants Lerner, Sampson & Rothfuss and Shellie Hill (ECF No. 120), and **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 123).

**IT IS SO ORDERED.**

7-19-2016
**DATE**

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**